IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

GIDGET L. ROGERS,

   Plaintiff,

v.                Case No. 14-1295-JTM

CAROLYN W. COLVIN,
Acting Commissioner of Social Security

   Defendant.

**MEMORANDUM AND ORDER**

   Plaintiff Gidget L. Rogers seeks review of a final decision by defendant, the Commissioner of Social Security ("Commissioner"), denying her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act"). Plaintiff alleges that the Commissioner erred in denying DIB because the Administrative Law Judge ("ALJ") failed to properly consider medical source opinions and plaintiff's credibility when determining plaintiff's residual functional capacity ("RFC"). As discussed below, the Commissioner's decision is affirmed.

**I. Background**

   In May 2011, plaintiff applied for DIB alleging disability beginning January 22, 2010, due to fibromyalgia and mental impairments that included bipolar disorder, depression, and posttraumatic stress disorder ("PTSD"). The State agency denied plaintiff's claims on January 19, 2012, and upon reconsideration on June 25, 2012. A

hearing was held before an ALJ on February 20, 2013. In a decision dated March 23, 2013, the ALJ concluded that plaintiff was not disabled within the meaning of the Act.

The ALJ found that plaintiff had the following severe impairments: fibromyalgia; osteoarthritis of both hands; degenerative changes of the lumbar spine; bilateral plantar faciitis; right carpal tunnel syndrome; degenerative changes of the cervical spine; major depressive disorder occasionally diagnosed as having psychotic features; bipolar I disorder; and "an anxiety-related disorder diagnosed variously as [PTSD], panic disorder with agoraphobia, and generalized anxiety disorder." (Dkt. 10-2, at 16).

The ALJ determined that plaintiff did not have an impairment or combination of impairments that meet or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

The ALJ concluded that plaintiff had the RFC to perform a range of light work requiring lifting or carrying 20 pounds occasionally and 10 pounds frequently, standing or walking for 2 hours in an 8-hour workday, and sitting for 6 hours in an 8-hour workday. He also determined that plaintiff can: occasionally stoop, kneel, crouch, crawl, and climb ramps and stairs; occasionally reach overhead; frequently finger and handle; perform simple tasks not performed in a fast-paced production environment or as an integral part of a team; and occasionally interact with the public. The ALJ determined that plaintiff must avoid climbing ladders, ropes, and scaffolds and avoid concentrated exposure to unprotected heights, cold temperature extremes, and vibration.

The ALJ concluded that plaintiff was unable to perform any past relevant work, but that there were jobs existing in significant numbers in the national economy that plaintiff could perform. He therefore found that plaintiff was not disabled, as defined by the Act, from January 22, 2010, until the date of the decision. The Appeals Council declined to review the ALJ's decision.

## II. Legal Standard

This court reviews the ALJ's decision under 42 U.S.C. § 405(g) to "determine whether the factual findings are supported by substantial evidence and whether the correct legal standards were applied." *Angel v. Barnhart*, 329 F.3d 1208, 1209 (10th Cir. 2003). Substantial evidence is that which "a reasonable mind might accept as adequate to support a conclusion." *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010) (citation omitted). "Substantial evidence requires more than a scintilla but less than a preponderance." *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004) (citation omitted). The court's role is not to "reweigh the evidence or substitute its judgment for the Commissioner's." *Cowan v. Astrue*, 552 F.3d 1182, 1185 (10th Cir. 2008). The possibility that two inconsistent conclusions may be drawn from the evidence does not preclude a finding that the Commissioner's decision was based on substantial evidence. *Zoltanski*, 372 F.3d at 1200.

An individual is under a disability only if she can "establish that she has a physical or mental impairment which prevents her from engaging in substantial gainful activity and is expected to result in death or to last for a continuous period of at least twelve months." *Brennan v. Astrue*, 501 F. Supp. 2d 1303, 1306-07 (D. Kan. 2007) (citing

3

42 U.S.C. § 423(d)). This impairment "must be severe enough that she is unable to perform her past relevant work, and further cannot engage in other substantial gainful work existing in the national economy, considering her age, education, and work experience." *Barkley v. Astrue*, 2010 WL 3001753, at *2 (D. Kan. July 28, 2010) (citing *Barnhart v. Walton*, 535 U.S. 212, 217-22 (2002)).

Pursuant to the Act, the Social Security Administration has prescribed a five-step sequential analysis to determine whether disability existed between the time of claimed onset and the date the claimant was last insured under the Act. *Wilson*, 602 F.3d at 1139; 20 C.F.R. § 404.1520(a)(4). If the trier of fact finds at any point during the five steps that the claimant is disabled or not disabled, the analysis stops. *Reyes v. Bowen*, 845 F.2d 242, 243 (10th Cir. 1988). The first three steps require the Commissioner to assess: (1) whether the claimant has engaged in substantial gainful activity since the onset of the alleged disability; (2) whether the claimant has a severe or combination of severe impairments; and (3) whether the severity of those impairments meets or equals a listed impairment. *Wilson*, 602 F.3d at 1139 (citing *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007)). If the impairments do not meet or equal a designated listing in step three, the Commissioner then assesses the claimant's RFC based on all medical and other evidence in the record. 20 C.F.R. § 404.1520(e). RFC is the claimant's ability "to do physical and mental work activities on a sustained basis despite limitations from her impairments." *Barkley*, 2010 U.S. Dist. LEXIS 76220, at *5; *see also* 20 C.F.R. §§ 404.1520(e), 404.1545. "RFC is not the *least* an individual can do despite his or her limitations or restrictions, but the *most*." SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996).

4

The Commissioner then proceeds to step four, where the RFC assessment is used to determine whether the claimant can perform past relevant work. *Lax*, 489 F.3d at 1084; 20 C.F.R. § 404.1520(e). The claimant bears the burden in steps one through four of proving disability that prevents performance of her past relevant work. 42 U.S.C. § 423(d)(5)(A); *Lax*, 489 F.3d at 1084.

If, as here, a claimant meets the burdens of steps one through four, "the burden of proof shifts to the Commissioner at step five to show that the claimant retains sufficient RFC to perform work in the national economy, given [her] age, education, and work experience." *Lax*, 489 F.3d at 1084 (brackets omitted).

### III. Analysis

Plaintiff argues that the ALJ erred in determining her RFC by: (1) not giving controlling weight to the opinion of Dr. Tiru M. Venkat, a treating physician; (2) varying from the State agency opinion, which was given substantial weight; and (3) failing to properly consider plaintiff's credibility.

The ALJ determines RFC by evaluating a claimant's impairments that are "demonstrable by medically acceptable clinical and laboratory diagnostic techniques," then weighing evidence to determine the nature and severity of those impairments. 20 C.F.R. §§ 404.1527(a), 416.927(a). Such evidence may include medical opinions, other opinions, and a claimant's subjective complaints. *Id.*; *see also Poppa v. Astrue*, 569 F.3d 1167, 1170-71 (10th Cir. 2009).

**A. The ALJ's Determination That Dr. Venkat's Opinion Was Entitled To Partial Weight Is Supported By Substantial Evidence**

A treating physician's statement is entitled to controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques." *Robinson v. Barnhart*, 366 F.3d 1078, 1082 (10th Cir. 2004) (quoting SSR 96-2p, 1996 WL 374188, at *2). If the treating physician's statement is not well-supported or is otherwise inconsistent with substantial evidence on record, then it is not entitled to controlling weight and is weighed as any other medical opinion. *Id.*

Medical opinions are weighed by evaluating all relevant factors including: (1) the length, nature, and extent of any examining or treatment relationship; (2) whether the opinion source presents supporting evidence, such as medical signs and laboratory results; (3) how well the source explains the opinion; (4) whether the opinion is consistent with the record; (5) whether the source has a specialty related to the claimant's impairments; and (6) all other relevant factors of which the ALJ is aware that may bear on what weight should be given to a medical opinion. 20 C.F.R. §§ 404.1527, 416.927; *see Knight ex rel P.K. Colvin*, 756 F.3d 1171, 1176-77 (10th Cir. 2014). "[T]he ALJ must give good reasons in the notice of determination or decision for the weight he ultimately assigns the opinion." *Knight*, 756 F.3d at 1177 (quoting *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003)).

Dr. Venkat treated plaintiff for back, neck, and heel pain on five occasions from June 14, 2011, until November 17, 2011, the date of his Medical Source Statement ("MSS"). On June 14, 2011, Dr. Venkat noted a significant amount of neck and back

pain. (Dkt. 10-13, at 13). Radiology revealed mild C6-C7 interspace narrowing, minimal degenerative disk disease changes at C5-C6, mild narrowing of lumbar spine interspaces, minimal sclerosis of the acetabulum, and prominent calcaneal spurs on both feet. (Dkt. 10-13, at 14). On June 21, 2011, Dr. Venkat again treated plaintiff, noting moderate but improving back pain and a normal gait. (Dkt. 10-13, at 9-10). On July 8, 2011, Dr. Venkat noted moderate but improving back and neck pain, mild anxiety, chronic heel pain, and a normal gait. (Dkt. 10-13, at 6-8). Dr. Venkat's notes from October 9, 2011, indicate that plaintiff presented with back pain that was improving, but provided no other clinical or laboratory signs indicating pain or the degree of pain. (Dkt. 10-14, at 45-46). His notes from November 17, 2011, indicate normal clinical exam results with normal gait, stable fibromyalgia, stable anxiety, and stable arthralgias. (Dkt. 10-14, at 91-92). Dr. Venkat did not indicate that a musculoskeletal exam was performed or that any imaging or laboratory testing accompanied his examination. Further, Dr. Venkat's MSS was issued on November 17, 2011, after only a short treatment history with plaintiff. One prior radiology report transmitted to Dr. Venkat on July 18, 2011, noted that medical imaging did not support any musculoskeletal cause of limiting pain. (Dkt. 10-14, at 38).

In his MSS, Dr. Venkat opined that plaintiff could participate in up to 4 hours of training per day, stand for 30 to 90 minutes at a time, and sit for 2 to 3 hours. He opined that her fibromyalgia limited gainful employment and that it "maybe" prevented gainful employment. (Dkt. 10-14, at 33).

7

Dr. Venkat's clinical notes indicating that plaintiff's pain symptoms consistently improved, that imaging did not suggest a musculoskeletal cause of debilitating pain, and that plaintiff had normal musculoskeletal clinical exams only minimally support his opinion that plaintiff may be disabled. Although pain might remain debilitating while improving, the lack of musculoskeletal causes or limitations noted in clinical exams does not provide support for such conclusion. Further, Dr. Venkat's clinical notes indicate that plaintiff's fibromyalgia, anxiety, and arthralgias were "stable," which is inconsistent with his notes that her symptoms were improving. His opinion is not entitled to controlling weight.

Further, Dr. Venkat treated plaintiff only five times in the six months preceding his MSS, indicating a short treatment relationship with plaintiff. His MSS is directed at time plaintiff can spend training and does not directly address the criteria for a DIB or RFC determination, which diminishes its probative value in making an RFC determination. Therefore, the ALJ's determination that Dr. Venkat's opinion was entitled to partial weight is supported by substantial evidence in the record.

## B. The ALJ Properly Considered the State Agency Opinion

Plaintiff alleges that the ALJ erred by deviating from the state agency opinions regarding her mental health by determining (1) that she can interact with the public occasionally, rather than infrequently, and (2) that she cannot perform fast-paced production work, rather than eliminating all jobs requiring extended concentration. (Dkt. 11, at 9-10). However, "the ALJ, not a physician, is charged with determining a claimant's RFC from the medical record." *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir.

8

2012). The ALJ is charged with determining plaintiff's RFC; he is not charged with following a medical opinion verbatim. Here, the ALJ afforded substantial – not controlling – weight to the state agency opinions. (Dkt. 10-2, at 24). He therefore did not commit error by deviating from the state agency opinions when determining plaintiff's RFC.

**C. The ALJ's Analysis of Plaintiff's Credibility is Supported by Substantial Evidence**

A claimant's subjective complaints of debilitating pain are evaluated for credibility under a three-step analysis that asks:

> "(1) whether the claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether the impairment is reasonably expected to produce some pain of the sort alleged (what we term a "loose nexus"); and (3) if so, whether, considering all the evidence, both objective and subjective, the claimant's pain was in fact disabling."

*Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166-67 (10th Cir. 2012) (citing *Luna v. Bowen*, 834 F.2d 161, 163-64 (10th Cir. 1987)). The ALJ "must consider the entire case record, including the objective medical evidence" to determine whether plaintiff's subjective claims of debilitating pain are credible. SSR 96-7p, 1996 WL 374186, at *1. The ALJ should consider "a claimant's persistent attempts to find relief for her pain and her willingness to try any treatment prescribed," regularity of contact with her doctor, possible psychological disorders that may combine with physical problems, daily activities, and daily dosage and effectiveness of medications. *Keyes-Zachary*, 695 F.3d at 1167.

The ALJ need not make a "formalistic factor-by-factor recitation of the evidence" if he specifies evidence relied on in the credibility analysis. *Id.* (citing *Qualls v. Apfel*, 206

9

F.3d 1368, 1372 (10th Cir. 2000)). "[A] credibility determination 'must contain specific reasons for the finding on credibility, supported by the evidence in the case record' and be 'sufficiently specific' to inform subsequent reviewers of both the weight the ALJ gave to a claimant's statements and the reasons for that weight." *Hayden v. Barnhart*, 374 F.3d 986, 992 (10th Cir. 2004) (quoting SSR 96-7p, 1996 WL 374186, at *4).

At steps one and two, the ALJ determined that plaintiff established pain-producing impairments that could reasonably be expected to cause the alleged symptoms. (Dkt. 10-2, at 20). He then proceeded to step three, weighing plaintiff's subjective complaints of physical limitations against objective medical evidence relating to physical symptoms.

The ALJ discussed physical exams and medical imaging performed or ordered by Dr. Venkat, Dr. Gery Hsu, and Dr. Shirley Wang. (Dkt. 10-2, at 21). Their notes all indicate only minimal musculoskeletal diagnoses and normal range of motion with diffuse muscle tenderness. (Dkts. 10-12, at 81-84; 10-14, at 30, 38). Dr. Hsu noted that he was "doubtful that this minimal degeneration can be causing the severe excruciating mechanical pain that [plaintiff] reports." (Dkt. 10-14, at 38). Dr. Venkat noted improvement in plaintiff's pain from July 2011 to November 2011. The ALJ noted that these treatment records do not support plaintiff's claimed limitations and do not preclude light work.

The ALJ then weighed plaintiff's claims of mental limitations against related medical evidence in the record, discussing plaintiff's history of mental health examinations and treatment from August 2010 to January 2013. (Dkt. 10-2, at 21-22).

10

Plaintiff's mental health treatment records generally indicate that, although she suffers from bipolar disorder, generalized anxiety, and PTSD, she responds well to medication. (Dkts. 10-11, at 44; 10-12, at 40; 10-14, at 69; 10-15, at 17; 10-16, at 11; 10-18, at 1-2). Plaintiff has been repeatedly documented as having intact memory, average intelligence, stable mood, and only moderate symptoms while on medication. *Id.* Further, her global assessment functioning scores improve with treatment and medication. *Id.* Therefore, substantial evidence in the record indicates that plaintiff's mental limitations do not preclude light work and are not as severe as claimed, especially when she is medicated.

The ALJ then weighed plaintiff's reported limitations against the remaining evidence in the record. In her own Function Report – Adult, plaintiff reported that she can prepare meals daily, launder clothes, make her bed, drive, shop for groceries about four times per week, manage finances, sit to watch television, and visit on the telephone. (Dkt. 10-6, at 59-64). Although plaintiff claims significant limitation in her ability to stand or walk, medical imaging and clinical signs indicate no such limitations. X-ray imaging supported a diagnosis of plantar faciitis on June 14, 2011, (Dkt. 10-13, at 14), but follow-up notes on August 24, 2011, indicate no other musculoskeletal problems and that plaintiff's gait was normal. (Dkt. 10-14, at 9-10). Plaintiff also reported on October 21, 2011, that she felt better with Lyrica and Cymbalta. (Dkt. 10-13, at 71). On January 28, 2013, she reported symptom-free periods between flare-ups and that the intensity of pain was moderate. (Dkt. 10-19, at 6). Such evidence is inconsistent with plaintiff's claims of debilitating pain.

The record contains substantial evidence supporting the ALJ's determination that the credibility of plaintiff's claims is diminished by evidence in the record. The ALJ's analysis of plaintiff's daily activities, success with treatment, and inconsistencies between her claims and other objective medical evidence is sufficiently specific to demonstrate his reasoning and the weight given to plaintiff's claims.

IT IS ACCORDINGLY ORDERED this 13th day of May, 2015, that the Commissioner's decision is AFFIRMED.

s\ J. Thomas Marten
J. THOMAS MARTEN, JUDGE